IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
WESTERN DIVISION

IN RE:

JASON M. and CINDY M. TODD,                    BK 05-73920-CMS-13

    DEBTORS.

### ORDER FINDING SECURITY INTEREST IS NOT
### PURCHASE MONEY SECURITY INTEREST IN MEANING OF § 1325(a)

This matter was before the court on creditor Money Source Inc.'s objection to the confirmation of debtors Jason M. and Cindy M. Todd's proposed Chapter 13 plan. Debtors' plan bifurcated the Money Source's auto loan into secured and unsecured claims under 11 U.S.C. § 506(a). The Money Source contended its interest could not be valued because of the recent amendments to 11 U.S.C. § 1325(a).

The court announced from the bench that the paragraph cited did not apply to refinancing loans; and valued the vehicle at $3,100.00 for plan purposes. The court held that the creditor's objection to confirmation/valuation would be **OVERRULED** as to that objection; but **SUSTAINED** as to the creditor's request for proof of insurance.

This order is the written memorialization of that bench order.

This court has jurisdiction of the Todds' bankruptcy case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of these contested matters, core proceedings under the Bankruptcy Code, pursuant to 28 U.S.C. § 1334(b). The jurisdiction is referred to this court, pursuant to 28 U.S.C. §157(a), by the General Order of Reference of the United States District Courts for the Northern District of Alabama, Signed July 16, 1984, As amended July 17, 1984.

Since the Todds filed their Chapter 13 petition on November 2, 2005, their bankruptcy case is governed by the new Bankruptcy Abuse Prevention Consumer Protection Act (BAPCPA) which took effect October 17, 2005.

The court makes the following findings:

**FINDINGS OF FACT**

Jason M. Todd testified at hearing that he purchased a 1992 Ford Explorer with funds loaned him by Autonet, Inc. (Autonet), more than 910[1] days before the November 2, 2005, bankruptcy filing. The parties agreed that at the time Autonet made the loan, debtors granted it a security interest in the Ford Explorer, creating a purchase money security interest.

On August 11, 2005, the Todds obtained a loan from The Money Source, Inc. (Money Source). Money Source paid the amount the Todds owed Autonet in full and also took its own security interest in the Ford Explorer. The parties agreed that this security interest would be deemed perfected by certificate of title on August 11, 2005. At the February 21, 2006, hearing, the parties agreed that the second loan comprised a refinancing transaction. (Creditor's counsel told the court that Autonet and Money Source were separate business entities, but shared a common owner and address.)

On November 2, 2005, the Todds filed this Chapter 13 case. Their plan proposed to pay allowed secured claims in full, but to provide no distribution to unsecured creditors. On November 11, 2005, the debtors filed this **MOTION TO DETERMINE VALUE** of the Explorer against Autonet, the original lender. They asked the court to determine the replacement value of this collateral to be $3,100.00 and to bifurcate the creditor's eventual $6,774.53 claim into secured and unsecured

---

[1] Money Source's certificate of title, submitted with its objection, stated the Todds' original purchase date for the Ford Explorer, used, was June 30, 2004. The title does not specify who they bought the vehicle from.

portions under 11 U.S.C. § 506(a). (BK Doc. 14).

On January 16, 2006, Money Source entered the case by filing an objection (BK Doc. 30, as amended by BK Doc. 37) to the proposed treatment of its debt under the debtors' plan. (BK Doc. 27). Money Source's motion contended that under the amended § 1325(a), the Todds could not "strip down" its debt into secured and unsecured portions as would have been allowed under former law. The parties agreed that the August 11, 2005, loan date is within 910 days of the bankruptcy filing. Money Source also complained that the Todds had allowed the insurance on the vehicle to lapse. For these reasons, the creditor asked the court to deny confirmation of the debtors' proposed reorganization plan.

Money Source stated in its amended motion that it had paid Autonet's debt off and "In addition, the Debtors received a cash pay out of $789.38." Attached documents show the loan was at an interest rate of 30.18 percent per annum.

The court heard Jason M. Todd's testimony in support of his motion to value and confirmation at the February 21, 2006, hearing. While Todd contended that, as far as he knew, the vehicle was insured, this issue was not resolved definitively at the hearing. Money Source offered no additional testimonial evidence. Counsel for both parties then made their arguments.

At the end of the hearing, the court announced that it disagreed with Money Source's major objection. The reasons are set out below:

**CONCLUSIONS OF LAW**

11 U.S.C. § 1325(a)(5) states that a plan will be confirmed if:

... [W]ith respect to each allowed secured claim provided for by the plan-

    (A) the holder of such claim has accepted the plan;

3

Case 05-73920-CMS13   Doc 53   Filed 03/14/06   Entered 03/14/06 15:49:48   Desc Main
Document      Page 3 of 7

    (B)(i) the plan provides that —

      (I) the holder of such claim retain the lien securing such claim until the earlier of-

        (aa) the payment of the underlying debt determined under nonbankruptcy law; or

        (bb) discharge under section 1328; and

      (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;
...

At the end of § 1325(a)'s other enumerations, the BAPCPA amendments tacked on a new un-numbered paragraph[2] which reads as follows:

> ... For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day (sic) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

It is undisputed that the Todds purchased the Explorer, a motor vehicle, for their personal use. However, for Money Source to take advantage of the new language added to § 1325(a), the creditor

---

[2] The legislative history for this amendment simply states that Section 306(b) of BAPCPA "adds a new paragraph to section 1325(a)" of the old act. (HR Rep. No. 31, 109th Cong., 1st Sess. 309 (2005)). Typographically, however, one revised code elided the additional paragraph with Section 1325(a)(9), making it appear to be part of that section. See Mini-Code Special Redlined Edition, AWHFY, L.P., 2005; and Norton, William L. Jr., Bankruptcy Code and Related Legislative History Editorial Commentary, Thomson West, (2005-2006). If the house report is accurate, Congress intended the paragraph to stand alone, since it is unrelated to the first sentence of (a)(9).

4

must have a legally cognizable "purchase money security interest" in the Ford. The court found that Money Source does not hold a purchase money security interest based on the following analysis.

The Bankruptcy Code itself does not define the term "purchase money security interest" as used in revised § 1325(a). As is often the case in bankruptcy, the court must look to relevant state law to determine what the term encompasses. Matter of Hillard, 198 B.R. 620, 622 (Bankr. N.D. Ala. 1996). Because all of the events giving rise to this proceeding took place in Alabama and it is the forum state for this Bankruptcy Court, the court will look to Alabama law for the definition.

Section 7-9A-103(a) of the Alabama Code (the secured transaction article under the state's version of the Uniform Commercial Code) states "'purchase-money collateral' means goods or software that secures a purchase-money obligation incurred with respect to that collateral; ... ." The section then states "'purchase-money obligation' means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used."

Autonet clearly acquired a purchase money security interest in the vehicle at the time of the sale because the creditor supplied the funds/value which allowed debtors to buy it. However, the debtors already owned the Explorer before Money Source, Inc., loaned them money to pay off Autonet's prior debt; and to provide them with an extra $789.38 in cash. The Money Source loan, therefore, did not "enable the [debtors] to acquire rights in or the use of the [motor vehicle]".

An exception to the rule does not apply. Under Alabama law, a debt arising out of a non-consumer goods (commercial) transaction does not lose its purchase money status when the debt is refinanced. See Ala. Code § 7-9A-103(f). Section 7-9A-102(23) defines consumer goods as "goods that are used or bought for use primarily for personal, family, or household purposes." Section 7-9A-

5

102(24) defines a consumer goods transaction as "a consumer transaction in which: ... (A) an individual incurs an obligation primarily for personal, family, or household purposes; and (B) a security interest in consumer goods secures the obligation."

Because it is undisputed that the debtors acquired the Explorer for personal use, their transaction with both Autonet and Money Source is a consumer, rather than "non-consumer" transaction under Alabama law. Consequently, the Section 7-9A-103(f) exception cannot apply.

The court concluded that since the Money Store did not hold a purchase money security interest in the Explorer within the meaning of Alabama law, it did not hold a purchase money security interest under 11 U.S.C. § 1325(a) either. In the Middle District of Alabama, Bankruptcy Judge Dwight H. Williams entered a written decision reaching the same conclusion on February 23, 2006. See In re Horn, 2006 WL 416314 (Bankr. M.D. Ala. 2006).

Because § 1325(a) clearly states that a creditor must have a purchase money security interest in collateral in order to assert that such collateral cannot be valued under § 506(a), the court held that the special exception in the new § 1325(a) cannot protect Money Source from the valuation of its collateral. That ruling is based on the specific facts of this case.

For these reasons, the court enters the following order. It is hereby

**ORDERED, DECREED, and ADJUDGED:**

1. Money Store's **OBJECTION TO CONFIRMATION** (BK 30, as amended by BK 37) is hereby **OVERRULED** to the extent the creditor claimed it was not subject to § 506(a) valuation pursuant to revised § 1325(a).

2. The Todds' **MOTION TO VALUE** (BK 14) is hereby **GRANTED** to the extent that the court found the Explorer's value is found to be $3,100.00 pursuant to 11 U.S.C. § 506(a). (That valuation has already been entered by separate order. (BK Doc. 44)) The creditor's secured claim will be a allowed at $3,100.00, to be paid through the confirmed Chapter 13 plan (The separate confirmation order was entered as BK Doc. 42.)

3. However, the court hereby **SUSTAINS** Money Source's objection seeking proof of insurance on the collateral, the evidence at hearing being inconclusive. The court hereby **ORDERS** debtors Jason M. and Cindy M. Todd to provide the creditor with proof of insurance on the vehicle within 14 days of entry of this order. If the debtor fails to comply with this order, the stay of § 362(a) will lift without further order from this court.

This writing includes the courts findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, and the orders required to implement them.

**DONE and ORDERED** this March 14, 2006.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge